56 CCPA

**FORD MOTOR COMPANY, Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5303.**

United States Court of Customs and Patent Appeals.

Nov. 21, 1968.

James E. O'Boyle, Dearborn, Mich., for appellant.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Alan S. Rosenthal, Washington, D. C., for the United States.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

BALDWIN, Judge.

This is an appeal by the Ford Motor Company from a judgment of the Second Division of the United States Customs Court, 59 Cust.Ct. 266, C.D. 3134, overruling various protests to set aside the collector's assessments of duty at 10 per centum ad valorem on various diesel engine parts imported between 1955 and 1963, the protests having been consolidated for trial.

The assessments were based upon classification of the articles as parts of machinery, not specially provided for, under paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, 19 U.S.C. § 1001 (1960 ed.), which provides in pertinent part:

> Machines, finished or unfinished, not specially provided for:
>
> \*   \*   \*   \*   \*   \*
>
> Internal-combustion engines:
> Carburetor type.....10% ad val.
> Other, of the horizonal type and weighing not over 5,000 pounds each, or not of the horizontal type and weighing not over 2,500 pounds each.......10% ad val.

Appellant filed protests, contending that the parts should have been classified as parts of agricultural implements under paragraph 1604 of the Tariff Act of 1930 (Free List), 19 U.S.C. § 1201 (1960 ed.), which provides in pertinent part:

> Agricultural implements: Plows, tooth or disk harrows, \*   \*   \*   and all other agricultural implements of any kind or description, not specifically provided for, whether in whole or in parts, including repair parts: Pro-

vided, that no article specified by name in Subtitle I shall be free of duty under this paragraph .......... Free

The merchandise embraced by this appeal consists of various types of metal parts, including exhaust valves, rocker arms, connecting rod bushings, and fuel injection parts. The imported parts were not "shelf item" parts but were, in fact, unique. All of the parts were specifically designed and imported for exclusive use by appellant and are capable of being used only in five identified specific makes and models of diesel engines. The chief use of the five makes and models of diesel engines, and consequently their parts, was in tractors employed in agricultural pursuits; however, all but one of the makes and models of engines were also used in significant numbers in products having non-agricultural uses, and no evidence whatsoever was presented on the relative rates of parts usage in the engines used in agricultural vis-a-vis non-agricultural pursuits.

The parts in question are essential parts of non-carburetor type internal combustion engines and are imported by appellant for use in the assembly or repair of five particular models of diesel engines. The court below found that:

> \*   \*   \*   the imported parts were used and could only be used in certain specific makes and models of diesel engines. Such engines, while chiefly used in agricultural tractors, admittedly also were used to a lesser extent for non-agricultural purposes.

Thus, the record shows that, although the imported parts were dedicated to use in a group of specified models of diesel engines, those models of diesel engines were not "dedicated" to agricultural purposes but were, instead, merely "chiefly used" for such purposes.

In this factual framework, the legal issue advanced below by appellant as plaintiff was fairly stated by the lower court in its opinion:

> Plaintiff's legal argument is that, inasmuch as chief use determines whether or not a given article is an

agricultural implement under paragraph 1604, the chief use test also should be applied to determine whether or not a component of such an article is a part of an agricultural implement also under paragraph 1604.

More specifically, plaintiff claims that, since it has shown the subject parts are dedicated to certain diesel engines, which engines are chiefly used in agricultural tractors, the parts are classifiable under paragraph 1604.

The Customs Court rejected appellant's view and held that, under settled principles of customs jurisprudence, a component is not a "part" of another article unless it is dedicated to use in that article. The Customs Court relied quite heavily on this court's decision in United States v. Ford Motor Company, 51 CCPA 22, C.A.D. 831, wherein, as here:

> The issue to be resolved is whether the classification of the engine parts here involved should be determined by application of the "dedication" test, as appellee urges, or by the "chief use" test urged by appellant. 51 CCPA at 24.

Ford, as appellee in the earlier *Ford* case, successfully advanced a position opposed to its present position. We agree with the court below that Ford's endeavor to rationalize its change in position is without merit.

In the prior *Ford* litigation, the merchandise consisted of metal objects which were essential parts of internal combustion engines. The parts were classified under paragraph 369(c) of the Tariff Act of 1930, as modified, as parts of automobiles. Ford protested that classification, claiming that the parts should have been more broadly classified under paragraph 353 or paragraph 372 as parts of internal combustion engines of the carburetor type.[1] While the parts were chiefly used in automobile engines, they were susceptible to use in industrial and marine engines, as well, and were so used; moreover from a physical examination of the parts at the time of importation, one could not tell whether they would be used in automobile, industrial, or marine engines. Accordingly, this court concluded that the proper classification of the engine parts was dependent upon whether the "dedication" test applied, as urged by Ford, instead of the "chief use" test, as asserted by the government. If the "chief use" test controlled, the parts were indisputably parts of automobile engines under paragraph 369(c); on the other hand, if the "dedication" test governed, the parts were not automobile parts since they were susceptible of other uses and, in fact, were employed in industrial engines in what was found to be greater than a mere fugitive use.[2]

In affirming the ruling of the Customs Court in Ford's favor, this court squarely held that the dedication test applied and that, as a consequence, the parts were not to be deemed, for customs purposes, parts of automobiles. In so holding, this court quoted with approval the enunciation by the Customs Court of the "well-settled" principle that:

> An article not an article constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite

---

1. Both of the latter paragraphs provided the same rate of duty, and it was unnecessary for the importer, the Customs Court, or this court to choose between them. Paragraph 372 is, of course, the paragraph which was invoked by the collector here.

2. An article may be dedicated to a particular use if something has been done to the article which, so far as substantial commercial, rather than fugitive use is concerned, limits it to a particular use. Paramount Import Export Co., et al. v. United States, 45 CCPA 82, C.A.D. 677.

manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture. 51 CCPA at 24.

Still further, this court added in the earlier *Ford* case:

One with a modest degree of familiarity with internal combustion engines and automobiles upon examining such parts * * * whether or not versed in mechanical nomenclature, would, it seems to us, readily recognize them as parts of engines rather than parts of automobiles. 51 CCPA at 26.

■ The teachings of the prior *Ford* case are thus clear. In order for an engine part to be deemed a part of a particular type of implement or instrumentality, such as an automobile or agricultural implement, it must be *dedicated* to use in engines which are, in turn, *dedicated* to use in that specific implement or instrumentality.

■ Applying these teachings to the present case, for the engine parts here involved to be deemed parts of a farm tractor—and thus parts of an agricultural implement—it is not enough that the majority of them have been destined for use in farm tractor engines and thus, in fact, will become parts of a farm tractor. To the contrary, these engine parts are not parts of farm tractors for the same reason that the engine parts in the prior case were not parts of automobiles; irrespective of how they are chiefly used, the parts here involved are not *dedicated* to use in a farm tractor engine and therefore are not *dedicated* to use in an agricultural implement.

■ Appellant's attempts to distinguish the prior *Ford* case are not persuasive. In its brief, appellant argues:

It is submitted that the decision in the *Ford* case, supra, has no pertinence here. That case, unlike the case presently before this Court, did not involve a "use" provision under the Tariff Act.

Certainly that case did not hold that the "chief use" test was inapplicable, as Appellee claims, in making classifications under "use" provisions of the Free List. On the contrary, the Customs Court in that case and the Court of Customs and Patent Appeals on appeal merely held that in making a classification as between two competing *eo nomine* provisions (one relating to "engines & parts" and the other relating to "automobiles & parts"), the "dedication" test and not the "chief use" test governs. We agree.

In this case, however, we have competition between a "use" provision and an *eo nomine* provision and, in this situation, we submit that the use provision must prevail. * * *

* * * there are two basic methods of classifying imported articles. One hinges on "what a thing is", the other hinges on "what a thing is to be used for." In determining what a thing is, this Court has developed the "dedication" test. On the other hand, if a classification calls for a determination of what a thing is to be used for, this Court has developed the well established "chief use" test. In the event of a conflict between an *eo nomine* classification and a use classification, the use classification and the chief use test prevail.

Appellant apparently is relying upon the doctrine of relative specificity—under which a use provision prevails over an *eo nomine* provision absent a clearly expressed legislative intent—for support of which it cites Julius Forstmann & Co. v. United States, 28 CCPA 222, C.A.D. 149. However, the *Forstmann* case made it clear that the doctrine of relative specificity does not come into play unless it can be said that the merchandise is classifiable under both of the competing tariff paragraphs. Here, too, if appellant had established that the merchandise came within the ambit of both of the competing paragraphs, then it could have invoked the doctrine of relative specificity in the determination as to which of the two applicable paragraphs

govern. Stated otherwise, if the engine parts had been established by the record to be *both* parts of internal combustion engines *and* parts of agricultural implements, then the doctrine of relative specificity might have come into play in favor of the latter classification. But the engine parts do not come within both classifications; they are not parts of agricultural implements within the meaning of paragraph 1604 because (1) they admittedly are not *dedicated* to use in such implements and (2) *dedication to use*—not chief use—is the proper test for determining whether one article is a "part" of another, as held in the earlier *Ford* case.

█ Although, as appellant has argued, it may very well be that the classification of a complete article as an agricultural implement under paragraph 1604 hinges upon whether the article is chiefly used in agriculture, the determination of whether a particular article is a "part" of another is made by the dedication test, irrespective of whether the complete article is classifiable on the basis of chief use or on some other basis.

Appellant's argument that the government's present position is inconsistent with the earlier position of the Bureau of Customs, overlooks the fact that the Bureau's earlier position, to which appellant alludes, preceded the prior *Ford* case which was decided in 1963. The Bureau of Customs has merely conformed its pre-1963 administrative practice to follow the decision of this court in the prior *Ford* case.

█ Appellant's final argument is that one of the models of engines was used solely in farm tractors during the years of importation. However, that fact does not satisfy the dedication test of a portion of the parts as urged by appellant for the reasons expressed by appellee:

> In the first place, that the 242 engine may have been exclusively used

in farm tractors during a given period does not necessarily mean that that engine was *dedicate*d to use in agricultural pursuits. For all that appears in the record, that engine was susceptible of use in non-farm tractors and industrial pursuits as well. If so, applying the teachings of the prior *Ford* case, the engine would not be a part of an agricultural implement irrespective of how it may have been actually employed. Insofar as the other engines are concerned, they admittedly were *both* susceptible of use, and actually used, in nonagricultural pursuits. Accordingly, beyond any question they did not satisfy the dedication test for classification as parts of agricultural implements.

Even if, however, the 242 engine could be deemed to be a part of an agricultural implement (simply because it happened to be used only in farm tractors) Ford's position would not be improved. What Ford's argument ignores is that the question here is not whether the 242 engine *itself* is classifiable under paragraph 1604. Rather, it is whether the imported engine *parts* qualify for that classification.

Thus, had Ford established (which it did not) that the 242 engine was dedicated to use in farm tractors, its burden still would not have been met. In order to qualify a particular engine *part* as a part of an agricultural implement, Ford would have had to establish that that *particular* part was dedicated to use in that *engine* (as opposed to use in one of the other engines which admittedly had some nonagricultural utilization).

Appellant has failed to meet that burden.

The judgment is affirmed.

Affirmed.

SMITH, J., participated in the hearing of this case but died before a decision was reached.